**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| CIBER, INC., *et al.*[1] | ) Case No.  17-10772 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |

**FINAL ORDER AUTHORIZING DEBTORS TO:  (A) USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO WELLS FARGO BANK, N.A.**

This matter came before this Court on the motion ([D.I. 14], the "Motion") of CIBER, Inc., *et al.* (the "Debtors") requesting that this Court enter an order authorizing Debtors to:  (a) use certain Cash Collateral; (b) incur Postpetition Debt; and (c) grant adequate protection and provide security and other relief to Wells Fargo Bank, N.A. ("Wells Fargo"), in its capacity as agent ("Prepetition Agent") to the lenders party to Prepetition Credit Agreement ("Prepetition Lenders"), and Wells Fargo in its capacity as agent ("Postpetition Agent"; together Prepetition Agent, "Agents") to the lenders party to the Postpetition Credit Agreement ("Postpetition Lenders"; together with Prepetition Lenders, the "Lenders").  Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

On April 11, 2017, a hearing (the "Interim Hearing") on the Motion was held under the provisions of Fed. R. Bankr. P. 4001(b)(2). At the Interim Hearing, the Court examined the Motion and was fully advised of the relevant facts and circumstances surrounding the Motion. After that hearing, the Interim Order was entered by the Court on April 12, 2017. In the Interim Order, the Court authorized certain relief, scheduled a final hearing for May 2, 2017, and set objection deadlines on the Motion.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of Debtor CIBER, Inc.'s federal tax identification number (the other Debtors do not have EINs) are: CIBER, Inc. (6833), CIBER International LLC and CIBER Consulting, Incorporated.  The principal place of business for each Debtor is 6312 South Fiddler's Green Circle, Suite 600E, Greenwood Village, CO 80111.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A.    On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code.  Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.    The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.    A Committee has been appointed in these Cases.

D.    Subject to Paragraph 8 of this Order, Debtors and Guarantors admit, stipulate and agree that:

1.    the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtors, Prepetition Agent and Prepetition Lenders;

2.    the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents;

3.    as of the Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed secured claim in an amount not less than $28,494,601.14, exclusive of accrued and accruing Allowable 506(b) Amounts;

4.    no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

2

5.      the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6.      upon the entry of this Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the Prepetition Lenders are oversecured; provided however, that nothing herein shall prejudice Prepetition Agent's and any Prepetition Lender's right to later assert that their respective interests in the Prepetition Collateral lack adequate protection.

7.      Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against the Prepetition Agent, the Prepetition Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

E.      Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 for any diminution in the value of such interests in the Prepetition Collateral from and after the Filing Date.

F.      Debtors have an immediate need to use Cash Collateral and incur Postpetition Debt as provided herein through the Termination Date, in order to prevent immediate and irreparable harm to the estate, minimize disruption to and avoid the termination of their business operations, and to maintain the value of their assets and businesses and maximize return to all creditors. Entry of this Order will also enhance the possibility of maximizing the value of the Debtors' property.

G.      Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of their businesses.  Except as provided below, Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Agent and Postpetition Lenders.

H.      The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

3

I.      The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

J.      Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agents' and Lenders' consent to the use of Cash Collateral and provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

K.      The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 361, 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED AS SET FORTH HEREIN, AND THAT:**

1.      <u>Authorization to Use Cash Collateral</u>.  Debtors are authorized to use Cash Collateral solely in accordance with the terms and provisions of this Order.

2.      <u>Procedure for Use of Cash Collateral</u>.

(a)      <u>Delivery of Cash Collateral to Postpetition Agent</u>.  Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Prepetition Agent in a manner satisfactory to Prepetition Agent) promptly upon receipt thereof.  If there is no Prepetition Debt outstanding, Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent) promptly upon receipt thereof.

(b)      <u>Cash Collateral in Agents' or Lenders' Possession</u>.  Agents are authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any Lender's possession or control that constitute Aggregate Collateral or proceeds thereof.

(c)    <u>Application of Cash Collateral</u>.  Agents are authorized to apply all Cash Collateral now or hereafter in their possession or control as follows: (1) first, to the payment of all Prepetition Debt in accordance with the Prepetition Documents (including Allowable 506(b) Amounts); (2) second, to payment of Postpetition Debt consisting of Postpetition Charges; and (3) third, to payment of other Postpetition Debt in accordance with the Postpetition Credit Agreement. All such applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee.  All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 below that such applications to other Prepetition Debt resulted in payment of an unsecured prepetition claim of Prepetition Agent or Prepetition Lenders.  Any amounts disgorged in connection with any such objection or determination shall be first applied to reduce the Postpetition Debt, dollar-for-dollar.  For the avoidance of doubt, the payment of Prepetition Debt shall not impact the rights of any Challenge Party to assert a Challenge in accordance with paragraph 8 hereof.  Agents shall have the right to apply Cash Collateral to amounts of Postpetition Debt ahead of amounts of Prepetition Debt in their discretion.

(d)    <u>Prohibition Against Use of Cash Collateral</u>. Except as provided for in this Order, Debtors will not use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363: (1) Agents have consented to such use; (2) at the time an order approving such use is entered, there is no Postpetition Debt and no obligation of Postpetition Lenders to extend Postpetition Debt; or (3) such Cash Collateral is first used to pay the Postpetition Debt in full; <u>provided</u>, that nothing in this Order shall prohibit Agents from agreeing, in their sole discretion, to the use of Cash Collateral.

3.    <u>Authorization To Incur Postpetition Debt</u>.

(a)    <u>Postpetition Documents</u>.  Debtors remain authorized and have agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Agent and Postpetition Lenders find reasonably necessary to implement the transactions contemplated by the Postpetition Documents; and (2) perform their obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order.  The Postpetition Documents constitute valid and binding obligations of Debtors enforceable in

accordance with their terms.  To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order shall govern and control.

(b)    <u>Permitted Uses of Postpetition Debt</u>.  Debtors are authorized and have agreed to incur Postpetition Debt solely:  (1) in accordance with the terms and provisions of this Order, (2) to the extent required to pay those expenses in the amounts set forth in the Budget (including any variance therefrom, solely as allowed under the Postpetition Credit Agreement), including the Carveout, as and when such expenses become due and payable, and (3) to pay Allowable 506(b) Amounts and the Postpetition Charges.  If Postpetition Lenders advance monies to Debtors and Debtors use such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.

(c)    <u>Additional Terms of Postpetition Debt</u>.  The following terms shall apply to Postpetition Debt:

(i)    <u>Maximum Amount</u>.  Upon entry of this Order, the maximum principal amount of Postpetition Debt outstanding shall not at any time exceed $41,000,000.

(ii)    <u>Interest</u>.  The Postpetition Debt shall bear interest at a per annum rate equal to the Base Rate (as defined in the Postpetition Credit Agreement) plus 5.25 percent.

(iii)    <u>Closing Fee</u>.  Debtors shall pay to Postpetition Agent, for the benefit of Postpetition Lenders, a closing fee (the "<u>Closing Fee</u>") in an amount equal to $1,200,000, (1) $400,000 of which was fully earned, due and paid immediately upon the closing of the Postpetition Credit Agreement, (2) an additional $600,000 of which shall be fully earned, due and payable upon entry of this Order, and (3) $200,000 of which shall be fully earned upon entry of this Order but will be due and payable upon May 26, 2017, <u>provided</u> that if the Aggregate Debt is paid fully, finally and indefeasibly on or before May 26, 2017, the $200,000 portion of such fee under subclause (3) hereof will be deemed automatically waived.

(iv)    <u>Maturity</u>.  The Postpetition Debt shall mature and be due and payable in full by Debtors on the Termination Date.

(v)    <u>Guarantors</u>.  Each Guaranty and all related security documents shall remain in full force and effect in accordance with their terms notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Agents and Lenders pursuant to Code § 363 or additional financing by Postpetition Agent and Postpetition Lenders pursuant to Code § 364.  Each Guarantor is and shall be liable for the guaranteed obligations under each such Guaranty, including, without limitation, all Postpetition Debt, and any refinancing thereof.  With respect to each Guaranty, Lender shall have the right to apply any and all proceeds received from such Prepetition Guarantor to reduce the Aggregate Debt in such manner as set forth in Paragraph 2(c) of this Order.  No marshaling shall be required.

(vi)    <u>Joint and Several Liability of Debtors</u>.  The obligations of each Debtor under this Order shall be joint and several.

(vii)    <u>Control Agreements</u>.  All "Control Agreements" (as defined in the Prepetition Credit Agreement) relating to the Debtors in effect as of the Filing Date shall remain in full force and effect and in favor of both Agents, notwithstanding the entry of this Order and any subsequent orders amending this Order.

(viii)    <u>Compliance with Budget</u>.  Debtors will covenant to comply with the Budget, subject only to variances set forth in the Postpetition Credit Agreement.

(ix)    <u>Sale Covenants</u>.  Debtors will covenant to comply with certain sale process milestones, as set forth in Section 5.16 of the Postpetition Credit Agreement.

(d)    <u>Superpriority Administrative Expense Status; Postpetition Liens</u>. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code, but subject to the Carveout and the Stalking Horse Bid Protections.  In addition, Postpetition Agent is hereby granted the Postpetition Liens, for the benefit of Postpetition Lenders to secure the Postpetition Debt.  The Postpetition Liens:  (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3), and (d) are Priority Liens (subject only to the Carveout, Permitted Priority Liens, the Prepetition Liens and Replacement Liens) without any further action by Debtors or Postpetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is

7

avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; and (5) shall not be subject to Code § 510(c).    Notwithstanding the foregoing, Debtors shall execute and deliver to Postpetition Agent such financing statements, mortgages, instruments and other documents as Postpetition Agent may reasonably request from time to time to provide further evidence of the perfection of the Postpetition Liens, and any such documents filed by Postpetition Agent shall be deemed filed as of the Filing Date.    Further, Prepetition Agent shall serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that requires perfection by possession or control, and all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Agent and Postpetition Lenders without further action by any party.

(e)    Prohibition Against Additional Debt.    Debtors will not incur debt secured by a lien which is equal to or superior to the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364: (1) Agents have consented to such use; (2) at the time such an order is entered approving such use, there is no Postpetition Debt outstanding, and no obligation of Postpetition Lenders to extend Postpetition Debt; or (3) such credit or debt is first used to pay the Postpetition Debt in full in cash.

(f)    Clarifications and Amendments Re: Postpetition Credit Agreement.    Upon entry of this Order, the Postpetition Credit Agreement shall be deemed clarified and amended as follows, without further action by the parties:

    (i)    Prepetition Lender Parties.    At all times previously and as of the date hereof, Wells Fargo Bank, N.A. is the only Prepetition Lender and Prepetition Agent.

    (ii)    Postpetition Indemnity and Release.    No indemnity or release benefitting a Postpetition Lender, Postpetition Agent or "Bank Product Provider" under and as defined in the Postpetition Documents shall be deemed or construed to apply to any claims unrelated to a party's capacity as a Postpetition Lender, Postpetition Agent or Bank Product Provider.

(iii)    Sale Milestones.    In Schedule 5.16 of the Postpetition Credit Agreement: (A) the phrase "forty (40) days after the Filing Date" in Section 5 thereof is replaced with the phrase "May 22, 2017"; and (B) the phrase "forty-five (45) days after the Filing Date in Section 6 thereof is replaced with the phrase "May 26, 2017".

(iv)    Avoidance Actions.    The definition of "Collateral" shall be deemed to exclude all "Avoidance Actions" (as both such terms are defined in the Postpetition Credit Agreement).

4.    Adequate Protection of Interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens.    Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363 or 364 to the extent of any diminution in the value of such interests in the Prepetition Collateral from and after the Filing Date.

(a)    Priority of Prepetition Liens/Allowance of Prepetition Lenders' Claim.    Subject to the terms of Paragraph 8 of this Order, (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid, and binding obligations of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization, or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Prepetition Agent's and Prepetition Lenders' claims with respect to the Prepetition Debt shall for all purposes constitute allowed secured claims within the meaning of Code § 506 in an amount not less than $28,494,601.14, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b)    Replacement Liens.    Prepetition Agent is hereby granted the Replacement Liens, for the benefit of Prepetition Lenders, as security for any diminution in the value of the Prepetition Collateral. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Prepetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or

9

instruments; (3) shall be subject only to the Prepetition Debt and Permitted Priority Liens; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases.  Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to Prepetition Agent such financing statements, mortgages, instruments and other documents as Prepetition Agent may reasonably request from time to time to provide further evidence of the perfection of the Replacement Liens.

(c)     Allowed Code § 507(b) Claim.  If and to the extent the adequate protection of the interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Agent and Prepetition Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout and the Stalking Horse Bid Protections, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Cases (other than Postpetition Agent's and Postpetition Lenders' claims under Code § 364) that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

5.     Termination Date; Rights and Remedies.

(a)     Effect of Termination Date.  Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Agent's election: (i) the Postpetition Debt shall be immediately due and payable, and (ii) Postpetition Agent shall be entitled to setoff any cash in any Lender's possession or control and apply such cash to the Aggregate Debt in accordance with Paragraph 2(c) of this Order.

(b)     Rights and Remedies.  On the fifth (5th) business day after the Termination Date, at Postpetition Agent's election, without further order of the Court:  (1) Agents shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law; and (2) Debtors shall

10

surrender the Aggregate Collateral and otherwise cooperate with Agents and Lenders in the exercise of their rights and remedies under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Agents.  Notwithstanding the foregoing, during such five (5) business day period following the Termination Date, Debtors may (a) seek to use Cash Collateral and (b) seek an order of this Court (i) determining that an Event of Default alleged to have given rise to the Termination Date did not occur or (ii) providing other appropriate relief; provided, however, that during such five (5) business day period, Postpetition Lenders shall have no obligation to advance Postpetition Debt to Debtors.

(c)     Access to Collateral.  Notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises that an Event of Default has occurred and is continuing, Agents may, consistent with otherwise applicable law, enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; provided that Postpetition Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Agents, calculated on a per diem basis.

6.     Carveout.

(a)     Carveout Terms.  The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Prepetition Agent or the Postpetition Agent) before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral.  Further, Postpetition Agent shall reserve against the DIP Commitment an

amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals.  Following the Termination Date, and notwithstanding anything herein or in the Postpetition Credit Agreement to the contrary (but subject to the DIP Commitment), Postpetition Lenders shall provide Postpetition Debt to the Debtors in an amount equal to (a) the Carveout amount for each Carveout Professional determined in clause (1) above, as and when such amounts are payable to a Carveout Professional, and (b) the Post-Termination Date Carveout Amount. Except as set forth in the preceding sentence, Postpetition Lenders shall have no obligation to fund any fees or expenses of Carveout Professionals accrued on, prior to, or after the Termination Date.

(b)    Carveout Usage.  No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Agents' or Lenders' interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Agents' or Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agents' and Lenders' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Agents and Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agents or Lenders; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $50,000, incurred by any Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Postpetition Agent.

(c)    Carveout Procedure.  The Debtors shall periodically, upon the request of the Postpetition Agent, and in all events not less than every two (2) weeks, provide to

the Postpetition Agent a written report (the "Carveout Report"), in which the Debtors disclose their then current, documented estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the two (2) week period following the date of such Carveout Report. Nothing herein shall be construed as consent by Agents and Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Agents or any Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Agents or any Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

7.    No Surcharge.    In the exercise of their business judgment and in consideration for the Lenders' agreement to fund the Postpetition Debt and the Carveout in accordance with this Order, Debtors (or any Trustee) agree that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Agents and Lenders. Further, Debtors represent that the Budget contains all reasonably anticipated expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Agents and Lenders under Code § 506(c). Therefore, the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), any "equities of the case" arguments, objections, or claims to be made under Code § 552(b), or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Agents, the Lenders or the Aggregate Collateral. In reliance on the foregoing, Agents and Lenders have agreed to the entry of this Order.

8.    Reservation of Rights; Bar of Challenges and Claims.    The stipulations and representations contained in this Order, including, without limitation, in Paragraph D, shall be binding on all parties in interest in these Cases, unless and solely to the extent that (i) a

Challenge is initiated prior to the end of the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

        (a)    Challenge Procedure.  Any Challenge Party that obtains or has standing, including the Committee, must commence, as appropriate, a contested matter or adversary proceeding raising any Challenge with respect to any claim, security interest, or any other rights of the Prepetition Lenders under the Prepetition Documents, including the nature of a setoff, counterclaim within the Investigation Period.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court, and nothing herein authorizes an adversary proceeding to be brought on a motion.

        (b)    Bar of Challenges and Claims.  If a Challenge is not commenced before the end of the Investigation Period (or such later date as agreed in writing by Prepetition Agent or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Prepetition Agent and the Prepetition Lenders described herein shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, (2) the Debtors and their estates shall be deemed to have waived, released and discharged Prepetition Agent, Prepetition Lenders and their respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise, and (3) the other stipulations in Paragraph D of this Order shall be deemed final and binding on all parties in interest in these Cases for all purposes.

        9.    Right to Credit Bid.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), (a) Prepetition Agent shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, and (b) Postpetition Agent shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any

14

portion of the Aggregate Collateral, so long as any such credit bid by Postpetition Agent provides for a cash payment sufficient to repay the Prepetition Debt in full in cash.

10.    <u>Waiver of Right to Return/Consent to Setoff</u>.  Debtors shall not, without the prior written consent of the Agents, exercise their rights:  (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553.

11.    <u>Indemnification</u>.  Debtors shall indemnify and hold harmless Agents and Lenders in accordance with the Postpetition Credit Agreement and the Prepetition Credit Agreement, as applicable.

12.    <u>No Marshaling</u>.  No Agent, Lender or any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

13.    <u>Postpetition Charges</u>.  All Postpetition Charges are hereby approved and shall be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment of the Postpetition Charges.  Invoices documenting any Postpetition Charges or any professional fees constituting Postpetition Charges or Allowable 506(b) Amounts shall be sent (redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information) to the following parties: (a) proposed co-counsels for the Debtors, (i) Morrison & Foerster LLP, 50 West 55th Street, New York, New York, Attn: Brett H. Miller, Esq.  (brettmiller@mofo.com) and Dennis L. Jenkins, Esq. (djenkins@mofo.com), and (ii) Polsinelli PC, 222 Delaware Ave., Suite 1101 Wilmington, DE 19801, Attn: Christopher Ward, Esq. (cward@polsinelli.com); (b) proposed co-counsel for the Committee Perkins Coie LLP, 30 Rockefeller Plaza, 22nd Floor, New York, NY 10112, Attn: Schuyler Carroll, Esq. (SCarroll@perkinscoie.com) and Shaw Fishman Glantz & Towbin LLC, 300 Delaware Ave., Suite 1370, Wilmington, DE 19801 , Attn: Thomas M. Horan (thoran@shawfishman.com); and (c) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801. Such parties shall have fourteen (14) days from the date of receipt of such invoices to object to the reasonableness of such amounts; <u>provided</u>, <u>however</u> that (i) such

15

Postpetition Charges and Allowable 506(b) Amounts will not be subject to Court approval or U.S. Trustee guidelines, (ii) no recipient of any such payment will be required to file with respect thereto any interim or final fee application with this Court, (iii) such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine, and (iv) any such objection shall not preclude or relieve Debtors of their obligations to pay them unless and until finally adjudicated by this Court.

14.   _Force and Effect of Prepetition Documents_.   Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt.   To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

15.   _Modification of Stay_.   Subject to paragraph 5 hereof, the automatic stay of Code § 362 is hereby modified with respect to Agents and Lenders to the extent necessary to effectuate the provisions of this Order.

16.   _No Waiver_.   Agents and Lenders shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Postpetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Agents or the Lenders, as applicable, and directed to Debtors.   No failure of Agents or Lenders to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Agents or Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Agents or Lenders in the exercise of any right or remedy under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy.   Further, this Order shall not constitute a waiver by Prepetition Agent or the Prepetition Lenders of any of their rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

16

17.    "Responsible Person." By taking any actions pursuant to or permitted by this Order, Agents and Lenders shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors.

18.    Payoff Release. Subject to paragraph 8 hereof, upon the date that the Aggregate Debt is paid in full in cash and prior to the release of the Postpetition Liens, Debtors shall execute and deliver to Agents and Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Prepetition Documents or Postpetition Documents.

19.    IBM Liens. Notwithstanding anything herein to the contrary, the Lenders' interest in any Shared Collateral (as defined in the IBM Security Interest Subordination Agreement) shall remain subject and subordinate to the IBM Liens and the Debtors shall not use any Cash Collateral derived from such Shared Collateral. Any proceeds derived from the Shared Collateral shall be placed in a separate, segregated account, which proceeds may only be distributed upon further order of the Court.

20.    Amendments. Debtors and Postpetition Agent may enter into amendments or modifications of the Postpetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed concurrently with this Court.

21.    Proof of Claim. Neither the Prepetition Agent nor any of the Prepetition Lenders shall be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof. Notwithstanding the foregoing or any subsequent order of Court concerning proof of claim filing requirements, Prepetition Agent is authorized (but not obligated) to file a single master proof of claim in Case No. 17-10772 (BLS) on behalf of itself and the Prepetition Lenders on account of their claims arising under the Prepetition Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.

17

Case 17-10772-BLS    Doc 151    Filed 05/02/17    Page 18 of 19

22.    <u>Binding Effect</u>.  Except as provided in Paragraph 8 herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing.  If any of the provisions of this Order are hereafter reconsidered or modified by subsequent order of this Court other than on appeal, such reconsideration or modification shall not affect: (a) subject to Paragraph 8 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such reconsideration or modification.  In such event, all such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Agents and Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.  If any of the provisions of this Order are hereafter reversed or modified on appeal, the Prepetition Agent, Prepetition Lenders, Postpetition Agent, and Postpetition Lenders will be entitled to the full benefits and protections of, and this Order shall be subject to, 11 U.S.C. § 364(e) on account of such parties acting in good faith and the Postpetition Debt being extended in good faith hereunder.  Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

23.    <u>Survival</u>.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.  The terms and provisions of this Order, including, without limitation, the rights granted Agents and Lenders under Code §§ 363, 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

18

24.   <u>Notice of Entry of Order</u>.  The Debtors shall serve, by United States mail, first-class postage prepaid, on (a) the parties having been given notice of the Final Hearing (as defined in the Interim Order), (b) any party which has filed prior to such date a request for notices with this Court, (c) counsel for the Debtors' secured creditors (other than the Agents and Lenders), (d) the Committee, (e) the Debtors' real and personal property lessors, and (f) the United States Trustee, which service (together with distribution via CM/ECF) shall constitute adequate and proper notice of the entry of this Order.

Hon. Brendan L. Shannon
United States Bankruptcy Judge

Dated:  May 2, 2017