**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| CIBER, Inc., *et al.*,[1] | )    Chapter 11 |
|  | ) |
|  | )    Case No. 17-10772 (BLS) |
|          Debtors. | ) |
|  | )    Jointly Administered |
|  | ) |
|  | )    **RE: Docket Nos. 8, 150** |

### ORDER (A) APPROVING THE SALE OF DEBTORS' ASSETS
### FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
### AND OTHER INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND
### ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
### LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Sale Motion")[2] of the above-captioned debtors

and debtors in possession (the "Debtors") for the entry of an order, pursuant to sections 105, 363,

365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving the sale (the

"Sale") of all or substantially all of the Debtors' assets relating to the Debtor's North American

business along with 100% of the capital stock in wholly-owned non-Debtor subsidiary

CIBERsites India Private Limited (the "Purchased Assets")[3] to HTC Global Ventures, LLC (the

---

[1]   The Debtors in the above-captioned chapter 11 cases, along with the last four digits of Debtor CIBER, Inc.'s
federal tax identification number (the other Debtors do not have EINs) are: CIBER, Inc. (6833), CIBER
International LLC and CIBER Consulting, Incorporated.  The principal place of business for each Debtor is
6312 South Fiddler's Green Circle, Suite 600E, Greenwood Village, CO 80111.

[2]   Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Sale
Motion, the Asset Purchase Agreement or the Bidding Procedures, as applicable.

[3]   The Purchased Assets shall have the meaning ascribed in Section 1.1 of the Asset Purchase Agreement.
Purchased Assets do not include the Excluded Assets as referenced in Section 1.2 of the Asset Purchase
Agreement or any assets of the Debtors not subject to the Asset Purchase Agreement.

ny-1283475
58702644.1

"Purchaser") pursuant to the terms of the Asset Purchase Agreement dated May 17, 2017 (attached here to as Exhibit 1, and as may be amended, supplemented, or restated, the "Asset Purchase Agreement") free and clear of all Interests (as defined herein); (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases as described in the Asset Purchase Agreement (the "Assigned Contracts"); and (c) granting certain related relief, all as more fully described in the Sale Motion; and the Court having reviewed and considered (a) the Sale Motion, (b) the objections to the Sale Motion, if any, (c) the Asset Purchase Agreement, and (d) the arguments of counsel made, and the evidence proffered or adduced at the hearing before the Court on May 19, 2017 (the "Sale Hearing"); and the Court having found that the relief requested in the Sale Motion is in the best interests of the Debtors', their estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Sale Motion and the opportunity for a hearing on the Sale Motion under the circumstances; and the Court having determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court in these chapter 11 cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**

A.    **Jurisdiction, Final Order and Statutory Predicates.** The Court has jurisdiction over the Sale Motion and the Sale described therein and in the Asset Purchase Agreement, including without limitation, the sale of the Purchased Assets, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of these cases and the Sale

Motion is proper in this District and in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), and (m), 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014, and Local Bankruptcy Rule 6004-1.

D.    The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.    To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

F.    In the absence of a stay pending appeal, the Purchaser, being a good faith purchaser under Section 363(m) of the Bankruptcy Code, may close the transaction contemplated by the Asset Purchase Agreement at any time on or after entry of this Sale Order, pursuant to the

ny-1283475
58702644.1

terms and conditions of the Asset Purchase Agreement and this Sale Order.  Cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

G.    **Petition Date.**  On April 9, 2017 (the "Petition Date") the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

H.    **Entry of Bidding Procedures Order**.  On May 2, 2017, this Court entered an order [Docket No. 150] (the "Bidding Procedures Order") (a) approving the proposed auction and bidding procedures (the "Bidding Procedures") for sale of the Purchased Assets; (b) establishing procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures"), including the notice of proposed cure amounts (the "Cure Amounts"); (c) approving form and manner of notice of all procedures, protections, schedules and agreements; and (d) scheduling the Sale Hearing.

I.    **Compliance with Bidding Procedures Order.**  As demonstrated by the (a) the *Declaration in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 3] (the "First Day Declaration"); (b) the *Declaration of Adam Dunayer in Support of the Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets By Public Auction; (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; and (C) Approving the Form and Manner of Notice Thereof; (II)(A) Authorizing and Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* attached as Exhibit C to the Sale Motion (the "Initial Dunayer Declaration"); (c) the

*Supplemental Declaration of Adam Dunayer in Support of the Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets By Public Auction; (B) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; and (C) Approving the Form and Manner of Notice Thereof; (II)(A) Authorizing and Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 235] (the "Supplemental Dunayer Declaration"); (d) the testimony and other evidence proffered or adduced at the hearing on the Bidding Procedures and at the Sale Hearing; and (e) the representations of counsel made on the record at the Sale Hearing, the Debtors have adequately marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order, the Bid Deadline was duly noticed, and the bidding process was conducted in a non-collusive, fair and good faith manner.  The Debtors and their professionals conducted the sale process in compliance with the Bidding Procedures Order and have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Purchased Assets and make higher or better offers.  The Purchaser acted in compliance with the terms of the Bidding Procedures Order.  In accordance with the Bidding Procedures Order, the Debtors determined that the bid submitted by the Purchaser and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bidding Procedures).  The Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement constitutes the

ny-1283475
58702644.1

highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

  J.  **Notice**.  As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (a) proper, timely, adequate and sufficient notice of the Sale Motion, the bidding process (including the Bid Deadline and Auction), the Asset Purchase Agreement, the Sale Hearing, the Sale, the Assumption and Assignment Procedures (including with respect to any previously omitted Assigned Contracts and the objection deadline with respect to any proposed Cure Amount), the assumption and assignment of the Assigned Contracts and the Cure Amounts, and all objection deadlines established by the foregoing, has been provided in accordance with sections 102(l), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9007 and the Local Bankruptcy Rules and in compliance with the Bidding Procedures Order, (b) such notice was and is good and sufficient, and appropriate under the particular circumstances and reasonably calculated to reach and apprise holders of liens, claims,[4] encumbrances and other Interests, including rights or claims based on any successor or transferee liability, and (c) no other or further notice of the Sale Motion, the bidding process (including the Bid Deadline and Auction), the Asset Purchase Agreement, the Sale Hearing, the Sale, or the assumption and assignment of the Assigned Contracts or the Cure Amounts is or shall be required.  With respect to entities whose identities are not reasonably ascertained by the Debtors, publication of the Auction and Sale Notice (as defined in the Sale Motion) in the *Financial Times* on April 26, 2017 and the *Daily News* on May 1, 2017 was sufficient and reasonably calculated under the circumstances to reach such entities.

---

[4] For purposes of this Sale Order, the term "claim" shall have the meaning ascribed to such term in Bankruptcy Code section 101(5) whether such claim is against the Debtors, the Purchaser, or anyone else.

ny-1283475
58702644.1

K. **Corporate Authority**. Each Debtor (a) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of each of the Debtors, (b) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement and all other documents contemplated thereby, (c) has taken all corporate action and formalities necessary to authorize and approve the Asset Purchase Agreement and all other documents contemplated thereby and the consummation by the Debtors of the transactions contemplated thereby, including as required by their respective organizational documents and (d) no government, regulatory or other consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtors to enter into the Asset Purchase Agreement and consummate the Sale.

L. **Opportunity to Object**. A fair and reasonable opportunity to object and to be heard with respect to the Sale Motion and the relief requested therein has been given to all interested persons and entities, including, but not limited to, the following: (a) all counterparties to the Assigned Contracts, (b) all other known creditors of the Debtors, (c) all Notice Parties, and (d) all applicable federal, state and local taxing and regulatory authorities.

M. **Sale in Best Interest**. At this time, the sale of the Purchased Assets to the Purchaser is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

N. **Business Justification**. Sound business reasons exist for the Sale. Entry into the Asset Purchase Agreement and the documents contemplated thereby, and the consummation of the transactions contemplated thereby, including the Sale and the assumption and assignment of

7

the Assigned Contracts, constitutes each Debtor's exercise of sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest. The Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale. Such business reasons include, but are not limited to, the following: (a) the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (b) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets on a going concern basis and avoid decline and devaluation of the Purchased Assets; (c) unless the Sale and all of the other transactions contemplated by the Asset Purchase Agreement are concluded expeditiously, as provided for in the Sale Motion and pursuant to the Asset Purchase Agreement, recoveries to creditors may be diminished; (d) the value of the Debtors' estates will be maximized through a sale of the Purchased Assets on a going concern basis rather than through a piecemeal liquidation or a potentially delayed sale pursuant to a plan of reorganization; (e) the Sale is the only viable alternative to liquidation; and (f) any plan would not likely have yielded as favorable an economic result.

O.    As demonstrated by the First Day Declaration, the Initial Dunayer Declaration, and the Supplemental Dunayer Declaration the Debtors and their professionals actively and adequately marketed the Purchased Assets to potential purchasers, both before and during their chapter 11 cases, as set forth in the Sale Motion and in accordance with the Bidding Procedures Order. The bidding and auction process set forth in the Bidding Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

ny-1283475
58702644.1

P.      No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would give equal or greater economic value to the Debtors than the value being provided by the Purchaser pursuant to the Asset Purchase Agreement. Among other things, the Sale is the best alternative available to the Debtors to maximize the return to their creditors. The terms and conditions of the Asset Purchase Agreement, including the consideration to be realized by the Debtors, are fair and reasonable. Approval of the Sale Motion, the Asset Purchase Agreement, the documents contemplated thereby, and the transactions contemplated thereby, including the Sale and the assumption and assignment of the Assigned Contracts, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

Q.      **Arm's-Length Sale**. The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The Purchaser is not an "insider" of the Debtors as defined in Bankruptcy Code section 101(31).

R.      **Good Faith Purchaser**. The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law. Specifically: (a) the Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (b) the Purchaser complied in all respects with the provisions in the Bidding Procedures Order in negotiating and entering into the Asset Purchase Agreement, and the

ny-1283475
58702644.1

transactions described therein comply with the Bidding Procedures Order; (d) the Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (e) all payments to be made by the Purchaser in connection with the Sale have been disclosed in the Asset Purchase Agreement; (e) no common identity of directors, officers or controlling stockholders exists among the Purchaser and the Debtors; (f) the negotiation and execution of the Asset Purchase Agreement and the documents contemplated thereby were at arm's-length and in good faith, and at all times each of the Purchaser and the Debtors were represented by competent counsel of their choosing; (g) the Purchaser did not in any way induce or cause the chapter 11 filing of the Debtors; and (h) the Purchaser has not acted in a collusive manner with any person. The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement and the documents ancillary thereto. The transactions contemplated by the Asset Purchase Agreement and the documents ancillary thereto, which include the sale of the Purchased Assets pursuant to the Asset Purchase Agreement and all covenants in and conditions thereto, and include all relief requested in the Sale Motion, are an integrated transaction, meaning that each component is an essential part of every other component and that the transactions can be consummated only if all of the components are consummated. Accordingly, each component of the transactions is subject to, and is protected by, the provisions of section 363(m) of the Bankruptcy Code.

S.      **Free and Clear**.  Pursuant to the terms and conditions of the Asset Purchase Agreement and this Sale Order, the Debtors may sell the Purchased Assets free and clear of all liens, interests, liabilities, obligations, Excluded Liabilities, claims, demands, guarantees, suits, defenses, credits, allowances, options, rights, restrictions, limitations, contractual commitments,

causes of action, choses in action, charges, rights of first refusal, rights of set off, recoupment, rebate, chargeback, credit or return, Encumbrances (as defined in the Asset Purchase Agreement) and similar restrictions (other than Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Debtors' chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests"), including, without limitation, (a) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification, or termination of the Debtors' interests in the Purchased Assets, or any similar rights, if any, (b) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, hypothecations, liens, judgments, demands, encumbrances, rights of first refusal or charges of any land or nature, if any, (c) those Interests that are Excluded Liabilities as set forth in the Asset Purchase Agreement; and (d) those Interests arising in connection with any agreements, acts, or failures to act of any of the Debtors or any of the Debtors' predecessors, affiliates, or representatives including, without limitation, interests based on successor liability, transferee liability, derivative liability, vicarious liability, or any similar theories under applicable state or federal law or otherwise because, with respect to each creditor asserting an Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied, *provided* that all Interests in the Purchased Assets will attach to the proceeds of the Sale with the same validity, extent, and priority as such Interests were attached to the Purchased Assets immediately before the closing of the Sale, and *further provided* that Debtors will cause the proceeds of the Sale to be remitted pursuant to paragraphs 10, 11 and 51 of this Sale Order.  Those holders of Interests

ny-1283475
58702644.1

who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their interest and/or claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they assert an interest or Encumbrance with the same priority, validity, force, and effect as they attached to such property immediately before the Closing Date (as defined below).

T.      The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated hereby, including the Sale and the assumption and assignment of the Assigned Contracts, (a) if the transfer of the Purchased Assets were not free and clear of all Interests of any kind or nature whatsoever, including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, or (b) if the Purchaser would, or in the future could, be liable for any Interests, including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise. The Purchaser will not consummate the transactions contemplated by the Asset Purchase Agreement, including the Sale and the assumption and assignment of the Assigned Contracts, unless this Court expressly orders that none of the Purchaser, its affiliates, its present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Interests, including rights or claims based on any successor or transferee liability. The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Sale Order to provide it,

12

pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Interests of any kind or nature whatsoever (including, without limitation, any potential successor and transferee liability claims).

U.    Not transferring the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all liens, claims, encumbrances, and other Interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

V.    **Assumption of Executory Contracts and Unexpired Leases.**    In accordance with the Bidding Procedures Order, the Debtors filed with the Bankruptcy Court notices identifying all executory contracts and unexpired leases that may be assumed and assigned as part of the sale of the Purchased Assets, (as such notices may be amended, modified, or otherwise supplemented from time to time, the "Assumption and Assignment Notices"), and served the Assumption and Assignment Notices on all non-Debtor counterparties to the executory contracts and unexpired leases identified therein. See Docket Nos. 121, 134, 142, 156, 157, and 169.    The Assumption and Assignment Notices informed each recipient that its respective executory contract or unexpired lease may be assumed and assigned as part of the sale of the Purchased Assets and, to the extent applicable, (a) the title of the executory contract or unexpired lease, (b) the name of the parties to the executory contract or unexpired lease, (c) the proposed Cure Amount, if any, should the executory contract or unexpired lease be assumed and assigned in connection with the sale of the Purchased Assets, and (d) the deadline by which any

ny-1283475
58702644.1

counterparty must file an objection to assumption and assignment of the applicable executory contract or unexpired lease, including relating to adequate assurance and/or the stated Cure Amounts. The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances and no other or further notice need be provided in connection with the assumption and assignment of the Assigned Contracts and the fixing of Cure Amounts for the Assigned Contracts.

W.    The Debtors shall have the right, in accordance with the Bidding Procedures Order, to serve a Supplemental Notice of Assumption and Assignment upon any non-Debtor counterparty to a previously omitted Assigned Contract indicating the Debtors' intent to assume and assign the previously omitted Assigned Contract to Purchaser. The counterparties will have fourteen (14) days to object to the Cure Amount or the assumption and assignment. If the parties cannot agree on a resolution, the Debtors will seek an expedited hearing before the Court to determine the Cure Amount and approve the assumption and assignment to Purchaser. If there is no objection, then the counterparties will be deemed to have consented to the assumption and assignment to Purchaser and the Cure Amount, and such assumption and assignment to Purchaser and the Cure Amount shall be deemed approved by this Sale Order without further order of this Court.

X.    The (a) transfer of the Purchased Assets to the Purchaser pursuant to the terms of the Asset Purchase Agreement and this Sale Order and (b) assignment to the Purchaser of the Assigned Contracts, will not subject the Purchaser to any liability whatsoever that arises prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any theory of equitable law, including any

14

theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise.

Y.    The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is the best interests of the Debtors, their estates, and their creditors.  The Assigned Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser and, accordingly, such assumption and assignment of Assigned Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

Z.    Pursuant to section 365(f) of the Bankruptcy Code, each Assigned Contract required to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in such contract or other restrictions prohibiting its assignment or transfer.  No section of any of the Assigned Contracts that would prohibit, restrict, or condition whether directly or indirectly the use, assumption or assignment of any of the Assigned Contracts in connection with the transactions contemplated by the Sale shall have any force or effect.

AA.    The assumption and assignment of the Assigned Contracts (a) is necessary to sell the Purchased Assets to the Purchaser, (b) allows the Debtors to sell their business to the Purchaser as a going concern, (c) limits the losses suffered by counterparties to the Assigned Contracts, and (d) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned

ny-1283475
58702644.1

Contracts. For these reasons, the Debtors have exercised sound business judgment in assuming and assigning the Assigned Contracts and such assumption and assignment is in the best interests of the Debtors' estates.

BB.    **Cure/Adequate Assurance**.    The Debtors have (a) cured, or have provided adequate assurance that they will promptly cure, any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A) and 365(f)(2)(A), and (b) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts within the meaning of 11 U.S.C. § 365(b)(1)(B). As demonstrated by (a) the *Declaration of Madhava Reddy in Support of Sale of Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Docket No. 240]; (b) the Supplemental Dunayer Declaration; (c) the testimony and other evidence proffered or adduced at the Sale Hearing; (d) the representations of counsel made on the record at the Sale Hearing; and (e) the Purchaser's promise to perform the obligations under the Assigned Contracts arising after assumption and assignment to the Purchaser, the Purchaser has demonstrated adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts. Pursuant to 11 U.S.C. § 365(f), the Assigned Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.

ny-1283475
58702644.1

CC.    **Prompt Consummation**.  The sale of the Purchased Assets must be approved and consummated promptly in order to preserve the value of the Purchased Assets.  Therefore, time is of the essence in consummating the Sale, and the Debtors and the Purchaser intend to close the Sale as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, prior to, and outside of, a chapter 11 plan of reorganization.  The Debtors' estates will suffer irreparable harm if the relief requested in the Sale Motion is not granted on an expedited basis.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the transactions contemplated by this Sale Order.

DD.    **No Fraudulent Transfer**.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding present or future creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Purchaser is not a mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors or their respective estates and there is no continuity between the Purchaser and the Debtors.  The Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and any of the Debtors.

EE.    The consideration provided by the Purchaser for the Purchased Assets pursuant to the Asset Purchase Agreement (a) is fair and reasonable, (b) is the highest and best offer for the Purchased Assets, (c) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States,

17

any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act as in effect in any jurisdiction in the United States).

      FF.    **Purchaser Not an Insider and No Successor Liability**.  The Purchaser is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or controlling stockholders existed between the Purchaser and the Debtors.  The transfer of the Purchased Assets and the assumption of the Assumed Liabilities (including any individual elements of the Sale) to the Purchaser pursuant to the terms of the Asset Purchase Agreement and this Sale Order, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Purchaser to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability.  Pursuant to the Asset Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not, among other things, purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Purchaser is not holding itself out to the public as a continuation of the Debtors.  The Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and any of the Debtors or their estates.  There is not substantial continuity between the Purchaser and the Debtors, and there is no continuity of enterprise or common identity between the Debtors and the Purchaser. The Purchaser is not a mere continuation of the Debtors or the Debtors' estates.  The Purchaser does not constitute a successor to any of the Debtors or their estates.

ny-1283475
58702644.1

GG.    **Legal, Valid Transfer**.  The transfer of the Purchased Assets to the Purchaser pursuant to the terms of the Asset Purchase Agreement and this Sale Order will be a legal, valid, enforceable, and effective sale and transfer of the Purchased Assets, and will vest the Purchaser with all legal, equitable, and beneficial right, title, and interest of the Debtors to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor or transferee liability.  The Purchased Assets constitute property of the Debtors' estates and good title is vested in the Debtors' estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and rightful owners of the Purchased Assets, and no other person has any ownership right, or title therein. The Asset Purchase Agreement and the documents contemplated thereby are valid and binding contracts between the Debtors and the Purchaser and shall be enforceable pursuant to their terms. The Asset Purchase Agreement, the documents contemplated thereby, the transactions contemplated thereby, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

HH.    **Asset Purchase Agreement Not Modified**.  The terms of the Asset Purchase Agreement and the documents contemplated thereby, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects and the terms of the Sale Order shall not modify the terms of the Asset Purchase Agreement.

II.    **Not a Sub Rosa Plan**.  The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

ny-1283475
58702644.1

The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

JJ.    **Sale Order Required by the Purchaser**.  Entry of this Sale Order approving the Asset Purchase Agreement is a requirement of the Asset Purchase Agreement and such requirement is an appropriate condition precedent to the Purchaser's consummation of the Sale and the transactions contemplated thereby.

KK.    **Legal and Factual Bases**.  The legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.    The Sale Motion and the relief requested therein is **GRANTED** and **APPROVED** as set forth herein.

2.    This Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order, are incorporated herein by reference.

3.    All objections to, or reservation of rights regarding, the relief requested in the Sale Motion, the entry of this Sale Order, or the relief granted herein, including, without limitation, any objections to Cure Amounts or relating to the cure of any defaults under any of the Assigned Contracts or to the assumption and assignment of any of the Assigned Contracts to the Purchaser by the Debtors, that have not been withdrawn, waived, or settled, or that have not otherwise been resolved pursuant to the terms hereof are hereby denied and overruled on the merits with prejudice.  All persons that failed to timely object, or withdrew their objections, to the Motion or the entry of this Sale Order are deemed to consent to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code. No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding

ny-1283475
58702644.1

Procedures Order, the Bidding Procedures Order is a final order of the Bankruptcy Court, and has not been vacated, withdrawn, rescinded, or amended and remain in full force and effect.

**Approval of the Sale of the Purchased Assets**

4.      The Asset Purchase Agreement and the documents ancillary thereto, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

5.      Pursuant to 11 U.S.C. §§ 105(a), 363(b) and (f), and 365, the sale of the Purchased Assets to the Purchaser free and clear of all Interests and the transactions contemplated by the Asset Purchase Agreement are approved in all respects, *provided* that all Interests in the Purchased Assets will attach to the proceeds of the Sale with the same validity, extent, and priority as such Interests were attached to the Purchased Assets immediately before the Closing of the Sale.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale as contemplated in the Asset Purchase Agreement and this Sale Order, and (iii) execute and deliver, perform under, consummate, implement and close the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such ancillary documents.

7.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all holders of equity interests in any Debtor, all holders of any claims against any Debtor, whether

ny-1283475
58702644.1

known or unknown, any holders of liens (as defined in the Bankruptcy Code) on all or any portion of the Purchased Assets, all counterparties to Assigned Contracts, the Purchaser, any other bidders for the Purchased Assets, any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, the Purchaser, and their respective successors and assigns.

**Sale and Transfer of Purchased Assets**

8.      Pursuant to 11 U.S.C. §§ 105(a), 363(b) and (f), and 365, the Debtors are hereby authorized and, unless the Debtors and the Purchaser otherwise agree, directed to sell the Purchased Assets to the Purchaser and consummate the Sale in accordance with, and subject to the terms and conditions of, the Asset Purchase Agreement and this Sale Order, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement and this Sale Order, and are further authorized and, unless the Debtors and the Purchaser otherwise agree, directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement and the documents contemplated thereby, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the documents contemplated thereby, including, without limitation, the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement, without any further corporate action or order of the Bankruptcy Court.  The Purchaser shall not

22

be obligated to proceed with the Closing under the Asset Purchase Agreement until all conditions precedent to its obligation to do so have been satisfied or waived.

9.      Pursuant to 11 U.S.C. § 363(b) and 363(f), the Debtors are authorized and, unless the Debtors and the Purchaser otherwise agree, directed to transfer the Purchased Assets to the Purchaser and, upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets upon consummation of the Asset Purchase Agreement (the "Closing Date"), free and clear of all Interests of any kind or nature whatsoever, including, without limitation, all rights or claims, including all claims and/or interests arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under federal or state laws or doctrines of successor, transferee, derivative, or vicarious liability, *provided* that all Interests in the Purchased Assets will attach to the proceeds of the Sale with the same validity, extent, and priority as such Interests were attached to the Purchased Assets immediately before the closing of the Sale.  All holders of Interests fall within one or more of the subsection of section 363(f) of the Bankruptcy Code and are adequately protected by (a) having their interests attach to the proceeds ultimately received by the Debtors and attributable to the Purchased Assets against or in which such interests are asserted, subject to the terms of such interests, with the same validity, force, and effect, and in the same order of priority that such interests now have against the Purchased Assets or their proceeds as of Closing; and (b) with respect to Wells Fargo Bank, N.A., in its capacity as prepetition and postpetition administrative agent under the Debtors' revolving credit facilities (in such capacity, "Agent"), having proceeds of the Sale paid in accordance with paragraphs 10, 11 and 51 of this Sale Order.

ny-1283475
58702644.1

10.     At the Closing, Debtors will cause a portion of the Purchase Price to be remitted to Debtors to be held, and Debtors are hereby directed to hold subject to further order of this Court, in a segregated account for the sole and exclusive benefit of the "Carveout Professionals" (as defined in the final order authorizing debtor-in-possession financing in these cases, [Docket No. 151], the "Final Financing Order"), in an amount equal to the maximum, aggregate, unpaid Carveout as of the Closing, which deposit shall be deemed allocated among the individual Carveout Professionals in accordance with the "Budget" (as defined in the Final Financing Order).  Upon deposit of such amount with Debtors and payment of the amounts described in Paragraph 51, Agent's obligations regarding the Carveout shall be deemed released and fully satisfied.

11.     At the Closing, Debtors will also cause a portion of the Purchase Price to be remitted to Agent in an amount sufficient for the "Aggregate Debt" to be paid in full in accordance with the terms of the "Prepetition Loan Documents" and "Postpetition Loan Documents" (as such terms as defined in the Final Financing Order), and Agent is authorized to apply such payment to the Aggregate Debt on a final and indefeasible basis.

12.     Following the Closing, the Debtors or the Purchaser are authorized and directed to execute and file a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature whatsoever.  On the Closing Date, this Sale Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser.  On the Closing Date, this Sale Order also shall be construed, and constitute for any and all purposes, a complete and general assignment of all right, title and interest of the Debtors and each bankruptcy estate in the Assigned Contracts.  Each and every

24

federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

13.    If any Person that has filed a financing statement, mortgage, mechanic's lien, *lis pendens*, or other document or agreement evidencing an Encumbrance against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has against or in the Purchased Assets, then, upon the Closing (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Purchased Assets, (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature against or in the Purchased Assets, and (c) the Purchaser may seek in the Bankruptcy Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has against or in the Purchased Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

ny-1283475
58702644.1

14.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

15.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Asset Purchase Agreement and this Sale Order; provided, however, that the foregoing restriction shall not prevent any party from appealing this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

16.    Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, subject to the occurrence of the Closing, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding Interests of any kind or nature whatsoever, including, without limitation, rights, interests or claims based on any successor or transferee liability, against or in a Debtor or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets or the operation of the Purchased Assets before the Closing Date, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its respective successors and assigns, their respective property and the Purchased Assets, such persons' or entities' Interests, including, without limitation such rights, interests or claims based on any successor, transferee, derivative, or vicarious liability.

ny-1283475
58702644.1

17.      On the Closing Date of the Sale, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests on the Purchased Assets, if any, as such Interests may have been recorded or otherwise exist.

18.      To the extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations or approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the chapter 11 cases or the consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts.

19.      Subject to the terms and conditions of this Sale Order, the transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever.

20.      For purposes of clarification, no provision of this Sale Order or the Asset Purchase Agreement shall authorize the Debtors to: (a) sell, transfer or assign to the Purchaser any software or proprietary information ("Software") licensed to any Debtor by SAP America, Inc. or its affiliates ("SAP") in violation of applicable law (within the meaning of 11 U.S.C. §365(c)(1)(A)) that prohibits the sale, transfer or assignment thereof to the Purchaser without the

27

consent of SAP; or (b) use the Software or any Software-related services provided by SAP for the benefit of the Purchaser or any other third party, in each case, to the extent prohibited by the agreements governing such Software or Software-related services. Notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, SAP shall retain the right to assert for defensive purposes only all defenses, including setoff or recoupment, against any Accounts Receivable that may be owed by SAP to any Debtor.

**No Successor Liability**

21.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, other than the Assumed Liabilities, with respect to the Purchased Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor, transferee, derivative, or vicarious liability, or similar theory or basis of liability. Neither the purchase of the Purchased Assets by the Purchaser nor the fact that the Purchaser is using any of the Purchased Assets previously operated by the Debtors will cause the Purchaser to be deemed a successor in any respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor (including any WARN Act), employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

22.     The Purchaser has given substantial consideration under the Asset Purchase Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser and which shall be deemed to have been given in favor of the Purchaser by all holders of Interests in or against the Debtors, or the

ny-1283475
58702644.1

Purchased Assets. Upon consummation of the Sale, the Purchaser shall not be deemed to (a) be the successor to the Debtors or the estates, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the Debtors.

23.     Except to the extent specifically agreed by the Purchaser in the Asset Purchase Agreement, the Purchaser shall not have any liability, responsibility or obligation for any Interests of the Debtors or their estates, including, without limitation, any claims, liabilities or other obligations related to the Purchased Assets prior to Closing Date. Under no circumstances shall the Purchaser be deemed a successor of or to the Debtors for any Interests against, in or to the Debtors or the Purchased Assets. For the purposes of this section of this Sale Order, all references to the Purchaser shall include the Purchaser's Affiliates, Subsidiaries and shareholders.

24.     <u>Examples of No Successor Liability</u>. Without limiting the generality, effect, or scope of the foregoing, as a result of and following the Closing of the sale, the Purchaser, except as expressly assumed under the Asset Purchase Agreement, shall have no derivative, successor, transferee, or vicarious liabilities of any kind or character, including, without limitation, federal, state, or other tax liabilities, United States or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor, employment, or benefits law, alter ego, veil piercing, escheat, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Debtors' chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, without limitation, liabilities arising, accruing, or payable under, out of, in connection with, or in any way relating to or calculated or determined with respect to or based in whole or in any part upon the operation of the Purchased Assets prior to the Closing, or any

ny-1283475
58702644.1

taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates.

**Good Faith**

25.     The transactions contemplated by the Asset Purchase Agreement, including, without limitation, the assumption and assignment of the Assigned Contracts, are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order to consummate the Sale shall not affect the validity of the sale of the Purchased Assets to the Purchaser.  The Purchaser is a purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

26.     .  As a good faith purchaser of the Purchased Assets, the Purchaser has not entered into an agreement with any other potential bidders, and has not colluded with any of the other bidders, any potential bidders or any other parties interested in the Purchased Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts**

27.     Pursuant to 11 U.S.C. § 105(a) and 365, and subject to and conditioned upon the closing of the Sale, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Assigned Contracts is hereby approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are hereby deemed satisfied.

28.     The Debtors are hereby authorized and, unless the Debtors and the Purchaser otherwise agree, directed in accordance with 11 U.S.C. § 105(a), 363 and 365, subject only to the

ny-1283475
58702644.1

making of all Cure Amounts, to (a) assume and assign to the Purchaser, effective upon the Closing Date of the Sale, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever, (b) assume and assign to the Purchaser any previously omitted Assigned Contract listed in any Supplemental Assumption and Assignment Notice in accordance with the terms of the Bidding Procedures Order, and (c) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

29.    Effective upon the Closing Date or, with respect to any Assigned Contract for which the applicable objection period has not yet passed under the Bidding Procedures Order or for which there is a pending dispute regarding the Cure Amount, the applicable date after the Closing of the Sale in accordance with the Bidding Procedures Order or paragraph 34 hereof, the Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Purchaser, except as provided in the Asset Purchase Agreement.

30.    Upon the Debtors' assumption and assignment of the Assigned Contracts under the provisions of this Sale Order, no default shall exist under any Assigned Contract and no counterparty to any such Assigned Contract shall be permitted to declare or enforce a default by the Debtor or the Purchaser thereunder or otherwise take action against the Purchaser as a result of any of the Debtors' financial condition, change in control, bankruptcy or failure to perform any of its obligations under the relevant Assigned Contract.  Any provision in an Assigned Contract

31

that prohibits or conditions the assignment or sublease of such Assigned Contract (including the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect only in connection with the assumption and assignment of such Assigned Contract to the Purchaser.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assigned Contract.

31.    All defaults under the Assigned Contracts arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured at the Closing Date or as soon thereafter as reasonably practicable, and the Purchaser shall have no liability or obligation arising or accruing prior to the Closing Date, except as otherwise expressly provided in the Asset Purchase Agreement.

32.    Each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Purchaser, or the property of either of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts.  Any party that may have had the right to consent to the assignment of an Assigned Contract is deemed to have consented to such assignment for purposes

32

of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to object to the assumption and assignment of such Assigned Contract.

33.    To the extent a counterparty to an Assigned Contract, including any previously omitted Assigned Contract, failed or fails to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assigned Contract to which it relates.

34.    The Debtors, the Purchaser and the relevant non-debtor counterparty to any Assigned Contract, in consultation with the Committee, shall have the authority to compromise, settle, or otherwise resolve any objections to proposed Cure Amounts without further order of the Bankruptcy Court.  Upon such consensual resolution and payment of such Cure Amounts by the Purchaser, the Assigned Contract(s) that were the subject of the dispute shall immediately be deemed to have been assigned to Purchaser without any further action.  If the Debtors, the Purchaser and the non-debtor counterparty determine that the objection to the Cure Amount cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Assigned Contract and/or the proposed Cure Amount with respect to such Assigned Contract will be determined by the Court at a date mutually agreed to by the parties or as determined by the Court.

35.    Notwithstanding anything in this Sale Order, the Bidding Procedures Order, the Sale Motion, the Asset Purchase Agreement, any list or schedule of Assigned Contracts, including the Designated Contracts List or any Supplemental Notice of Assumption and Assignment (including, without limitation, any other provision that purports to be preemptory or supervening): (a) the Purchased Assets shall not include any insurance policies that have been issued by ACE American Insurance Company, Federal Insurance Company, Great Northern

33

Insurance Company, Pacific Indemnity Company or any of their respective affiliates or successors (collectively, the "Chubb Companies") or that provide coverage at any time to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"); (b) the Chubb Insurance Contracts, and/or any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, shall be Excluded Assets; and (c) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts.

**Backup Bidder**

36.      Capgemini America, Inc. ("CG America") is hereby approved as the Backup Bidder, and pursuant to Bankruptcy Code sections 105, 363 and 365, and the asset purchase agreement submitted by CG America and the sale of the Purchased Assets to and consummation of the sale to CG America are hereby approved as the Backup Bid.  The Backup Bid, pursuant to the terms submitted therewith, including the Stalking Horse Purchase Agreement, is hereby approved and authorized as a Backup Bid and shall remain open as a Backup Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction up to the earlier of: (a) the closing of the Sale with the Purchaser; and (b) June 28, 2017, *provided* that notice has been provided to CG America on or before June 8, 2017 that CG America has become the Successful Bidder.  In the event that the Successful Bidder cannot or refuses to consummate the Sale, CG America will be deemed the new Successful Bidder and the Debtors shall be authorized, but not directed, to close, and take all actions necessary to close, with CG America on the Backup Bid without further order of the Bankruptcy Court, and in such case the findings and other provisions of this Sale Order shall apply to CG America and the Backup Bid to the same extent they do with respect to Purchaser and the Asset Purchase Agreement.

ny-1283475
58702644.1

**Additional Provisions**

37.    The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

38.    Each and every federal, state, and local governmental agency, court or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.   On the Closing Date, the Debtors and the Purchaser are authorized to take such actions as may be necessary to obtain a release of any and all Interests in the Purchased Assets, if any, and to the extent contemplated hereby and by the Asset Purchase Agreement.   This Sale Order (a) shall be effective as a determination that, on the Closing Date all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.   Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.   The Purchaser

ny-1283475
58702644.1

and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph. Upon the Closing, all interests of record as of the date of this Sale Order shall be forthwith deemed removed and stricken as against the Purchased Assets. All entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, rights, interests and encumbrances against the Purchased Assets from their records, official and otherwise, pursuant to the terms and conditions of this Sale Order.

39.    If any person or entity that has filed statements or other documents or agreements evidencing claims, liens, encumbrances, or interests in any of the Purchased Assets does not deliver to the Debtors or the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other Interests that the person or entity has or may assert with respect to any of the Purchased Assets, then upon the Closing, the Debtors and/or the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Purchased Assets.

40.    The Debtors will cooperate with the Purchaser and the Purchaser will cooperate with the Debtors, in each case to ensure that, unless the Debtors and the Purchaser otherwise agree, the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement.

ny-1283475
58702644.1

41.     The terms and provisions of the Asset Purchase Agreement, the documents contemplated thereby, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests on the Purchased Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

42.     The failure specifically to include any particular provisions of the Asset Purchase Agreement or the documents contemplated thereby in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the documents contemplated thereby be authorized and approved in their entirety.

43.     The Asset Purchase Agreement and the documents contemplated thereby may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court; *provided* that notwithstanding the foregoing, no modification or amendment that is materially adverse to the Debtors shall be made without the consent of the Committee and Agent, which consent shall not be unreasonably withheld, or, absent such consent, without further order of this Court.

44.     Unless the Debtors and the Purchaser otherwise agree, nothing contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases or any order of this Court confirming such plans or in any other order in these chapter 11 cases, including any order entered after any conversion of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, shall alter, supersede, abrogate, nullify, restrict, conflict with, or derogate

ny-1283475
58702644.1

from, the provisions of the Asset Purchase Agreement or the documents contemplated thereby or the terms of this Sale Order or in any way prevent or interfere with the consummation or performance of the transactions contemplated by the Sale.  Unless otherwise agreed by the Debtors and the Purchaser, the provisions of this Sale Order, the Asset Purchase Agreement, and the documents contemplated thereby  and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization or liquidation of the Debtors, or which may be entered converting these chapter 11 cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Asset Purchase Agreement and the documents contemplated thereby as well as the rights and interests granted pursuant to this Sale Order and the Asset Purchase Agreement and the documents contemplated thereby shall continue in these chapter 11 cases or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors, their estates and the Purchaser and their respective successors and permitted assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors or their estates under chapter 7 or chapter 11 of the Bankruptcy Code.

45.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary to (i) allow the Purchaser to deliver any notice provided for in the Asset Purchase Agreement and the documents contemplated thereby, and (ii) allow the Purchaser to take any and all actions permitted under the Asset Purchase Agreement and the documents contemplated thereby in accordance with the terms and conditions thereof.  The automatic stay imposed by section 362 of the Bankruptcy Code shall be modified solely to the extent necessary to implement the preceding sentence, and the Bankruptcy Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

ny-1283475
58702644.1

46.    The provisions of this Sale Order, the Asset Purchase Agreement and the documents contemplated thereby are nonseverable and mutually dependent.

47.    Compliance with the legal requirements relating to bulk sales and transfers is not necessary or appropriate under the circumstances.

48.    The Debtors and each other person having duties or responsibilities under the Asset Purchase Agreement or this Sale Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Sale Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Sale Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court. Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Sale Order and the transactions contemplated thereby and hereby.

49.    In addition to Section 8.9 Preservation of Records in the Asset Purchase Agreement, for a period of not less than 2 years following the Closing Date, each Party shall use its respective commercially reasonable efforts to (i) preserve all books, records, emails and other Documents related to Debtors' business prior to the bankruptcy filing that are in the possession of such Party immediately following the Closing and (ii) provide the other Party with reasonable

ny-1283475
58702644.1

access to such books, records, emails, and other Documents. The Seller and the Purchaser shall not knowingly take any affirmative action to destroy or otherwise abandon any such books, records, emails and other Documents during the 2 year period following the Closing Date, absent further order of the Bankruptcy Court, after a hearing on at least 30 days-notice to parties in interest.

50.     Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

51.     Subject to the terms and conditions of the Bidding Procedures Order, the Debtors shall promptly pay on the Closing Date the Breakup Fee and the Expense Reimbursement to the Stalking Horse Purchaser from the first cash proceeds of the Sale.

52.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser free and clear of Interests (other than Permitted Encumbrances), or compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Sale

40

Order, and (e) protect the Purchaser against (i) claims made related to any of the Excluded Liabilities, (ii) any claims based on successor, transferee, derivative, or vicarious liability, or any similar theory, related to the Purchased Assets or Assigned Contracts, or (iii) any claims of Interests asserted on or in the Debtors or the Purchased Assets, of any kind or nature whatsoever.

Dated: May   , 2017
       Wilmington, Delaware

                              THE HONORABLE BRENDAN L. SHANNON
                              UNITED STATES BANKRUPTCY JUDGE

41