**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CMTSU Liquidation, Inc., et al. [1]<br>    f/k/a CIBER, Inc., *et al.,*<br><br>                              Debtors. | Chapter 11<br><br>Case No. 17-10772 (BLS)<br>Jointly Administered<br><br>Objections Due: November 8, 2017 at 4:00 p.m.<br>Hearing Date: November 15, 2017 at 9:30 a.m.<br><br>**Re: D.I. 760** |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION
TO STATE OF HAWAI'I, DEPARTMENT OF TRANSPORTATION'S
MOTION TO ESTIMATE ITS CLAIM SOLELY FOR
<u>VOTING PURPOSES PURSUANT TO BANKRUPTCY RULE 3018</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of the

Debtor and its affiliated debtors-in-possession (collectively, the "**Debtors**")

submits this Objection to *State of Hawai'i, Department of Transportation's*

*Motion to Estimate its Claim for Voting Purposes Pursuant to Bankruptcy Rule*

*3018* (the "**Motion**") [D.I. 760].[2]

**OVERVIEW**

1.      State of Hawai'i, Department of Transportation ("HDOT") is

seeking temporary allowance of its asserted claim for the total amount asserted.

There is no maximum amount indicated and the request is for temporary

allowance for voting purposes of "not less than $46 million."    Temporary

---

[1]  CMTSU Liquidation, Inc.'s federal tax identification number (the other Debtors do not
have EINs) are: CMTSU Liquidation, Inc. (6833) (f/k/a CIBER, Inc.), CMTSU
Liquidation 2, Inc. (f/k/a CIBER Consulting, Incorporated), and CMTSU Liquidation 3,
LLC (f/k/a CIBER International LLC).

[2]   Unless otherwise defined in this Objection, capitalized terms retain the definition
given to them in the Motion.

allowance of HDOT's disputed claim would permit HDOT to obtain a blocking position and ensure that a plan could never be confirmed without HDOT's consent.

2.      The Debtors' Disclosure Statement emphasizes that HDOT is unlikely to prevail on its claim.  Even if HDOT's asserted claim proves to be successful, it appears that all or part of the claim might be covered by one or more of the Debtors' insurance policies.  Such insurance coverage would greatly reduce or entirely eliminate HDOT's claim against the Debtors.

3.      Despite the uncertainty regarding the amount and the Debtors' ultimate liability for all or any part of its claim, HDOT asserts that it is one of the largest unsecured creditors of the Debtors and consequently seeks to obtain a blocking position and control the Class 3 Vote.  For the reasons set forth in this Objection, the Court should deny HDOT the opportunity to exercise undue control over the Debtors' plan confirmation process and refuse to temporarily allow HDOT's asserted claim for voting purposes in the amount suggested by HDOT.

## FACTUAL BACKGROUND

4.      On April 9, 2017 (the "**Petition Date**"), the Debtors commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      On August 17, 2017, the Debtors filed their proposed Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, and the Debtors have since filed an amended version of the Proposed Plan as well as a Plan Supplement (altogether, the "**Proposed Plan**") [Docket Nos. 524, 638, and 743].

6.      In the Debtors' Disclosure Statement [Docket No. 672] and Proposed Plan, the Debtors estimate the amount of Allowed Claims in Class 3 (General Unsecured Claims) to be between $45,000,000 and $71,900,000.  *See Disclosure Statement*, Page 4, Footnote 5.  The deadline to submit a vote with respect to the Proposed Plan was November 1, 2017, and the confirmation hearing is currently scheduled for November 28, 2017 (if substantially uncontested) or December 13, 2017 (if contested).

7.      On September 29, 2017, the Court entered an *Order Pursuant to Sections 105 and 502(c) of the Bankruptcy Code For Approval of Alternative Dispute Resolution and Claims Estimation Procedures* [Docket No. 668] (the "**Estimation Order**"). Under the Estimation Order, the Court authorized and established procedures (the "**Disputed Claims Procedures**") for resolving, or, in the alternative, estimating for reserve purposes certain asserted or known General Unsecured Claims against the Debtors in excess of $5 million (the "**ADR Disputed Claims**"). Under the Disputed Claims Procedures, the Debtors were permitted to send each holder of an ADR Disputed Claim a proposed allowed amount for its ADR Disputed Claim.  Under the Estimation Order, the Debtors' insurance providers are permitted to participate in the resolution of the ADR Disputed Claims to the extent any such insurer's policy covers an ADR Disputed Claim and such participation is authorized under applicable policy documents. For each ADR Disputed Claim, if the parties reach a resolution regarding the proper allowed amount, the parties will work to promptly memorialize a settlement to be filed with the Bankruptcy Court.

8.      Also on September 29, 2017, the Court approved the Debtors' Disclosure Statement [Docket No. 667] (the "**Disclosure Statement Order**"). Under the Disclosure Statement Order, if a claim for which a proof of claim has been timely filed is wholly contingent or unliquidated, the claimant is allowed to cast one vote valued at $1.00 for voting purposes.  *See Disclosure Statement Order*, Paragraph 36(b).

9.      October 6, 2017 was the bar date for governmental entities, such as HDOT, to file a proof of claim.  On October 6, 2017, HDOT timely filed the its proof of claim and asserted prepetition claims against CIBER, Inc. of no less than $46 million.  *See* Proof of Claim #645.

10.     On September 25, 2015, Ciber filed a complaint against HDOT in the Circuit Court for the First Circuit of the State of Hawaii[3] asserting various claims, including breach of contract, unjust enrichment, and promissory estoppel based on HDOT's non-payment and wrongful termination of a contract between Ciber and HDOT pursuant to the Hawaii Public Procurement Code.  HDOT's proof of claim stems from counterclaims that HDOT filed against Ciber, Inc. in the action.  The Debtors dispute the counterclaims and believe that HDOT owes the Debtors approximately $17 million for HDOT's repudiation of the agreements between Ciber, Inc. and HDOT.  *See Disclosure Statement*, Page 27.

11.     On October 23, 2017, HDOT filed its Motion, requesting that the Court temporarily allow it to estimate its pre-petition claim under Bankruptcy

---

[3]      The action was removed to the United States Bankruptcy Court for the District of Hawaii and was thereafter remanded to state court.

Rule 3018 to vote in the full amount that was asserted of "no less than $46 million."

## HDOT'S MOTION MUST BE DENIED

### I.    Even If Valid, HDOT's Claims May Be Covered by One or More of the Debtors' Liability Insurance Policies

12.    As recognized in HDOT's Motion, Bankruptcy Rule 3018(a) allows disputed claims "to vote on the plans, even though some may be eventually disallowed for purposes of distribution, is more in keeping with the spirit of Chapter 11 which encourages creditor vote and participation in the reorganization process." *In re Amarex,* 61 B.R. 301, 302 (Bankr. W.D. Okla. 1985).  A court should value a temporary voting claim at "the amount of the claim [stated by the claimant] diminished by the probability that it may be sustainable only in part or not at all." *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (internal citation omitted).  Assuming (without admitting and solely for the sake of argument) that HDOT's claim is valid, their asserted claim may fall within the scope of coverage under one or more of the Debtors' liability insurance policies.  Even if HDOT were to prevail on its claim, the amount that the Debtors might ultimately be exposed for may be significantly less than $46 million.  HDOT's Motion is silent regarding the possibility of insurance coverage for all or part of its claim.

13.    HDOT's claim allegedly arises from work that the Debtor performed for HDOT pre-petition.  Claims such as these should fall squarely within one or more of the Debtors' liability insurance policies.

14.     If HDOT's claim is covered entirely by one or more of the Debtor's insurance policies, HDOT's claim against the Debtors will be no more than the Debtor's deductible (or self-insured reserve) under the insurance policies. And even if only a portion of HDOT's claim is covered by the liability insurance policies, such coverage would greatly reduce the amount of HDOT's potential distribution from the Debtors' estates.

15.     If this court were to temporarily allow HDOT's claim for voting purposes in the full amount, it would provide HDOT with significantly more voting power than HDOT might be actually entitled.   As set forth below, if HDOT's claim was to be temporarily allowed, HDOT's claim would obtain a blocking position and cause Class 3 to vote against the Plan.

16.     Given the likelihood that HDOT's claim, if even successful, may be reduced or eliminated by insurance coverage, the Court should refuse to grant HDOT the voting power that it is requesting (a blocking position for any plan of reorganization) and refuse to temporarily allow HDOT's claim for voting purposes in the amount requested by HDOT.

## II.     Temporary Allowance of HDOT's Claim Would Adversely Affect the Other Class 3 Allowed Claims

17.     Under Section 1125(c), "[a] class of claims has accepted a plan if such plan has been accepted by creditors, … that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors ...  11 U.S.C. §1125(c).

18.     As set forth in this Objection, the Debtors have estimated that the Allowed Claims in Class 3 will total between $45,000,000 and $71,900,000.  *See Disclosure Statement*, Page 4, Footnote 5.  HDOT is asserting a total claim of "no

less than $46 million" and if its claim were temporarily allowed, it would clearly represent more than one-third of the potential votes in Class 3.  For information purposes, $46 million equals approximately 50.5% of $91 million and 39% of $117.9 million – a blocking position in either instance.

19.     Given the uncertainty regarding the ultimate allowability of HDOT's disputed and unliquidated claim (including the impact of any reduction as a result of insurance coverage), the Court should decline HDOT's request for such undue voting power and grant such additional relief as is just and proper.

*[signature page follows]*

Dated: November 8, 2017

**SHAW FISHMAN GLANTZ
& TOWBIN LLC**

/s/ Thomas M. Horan
Thomas M. Horan (DE Bar No. 4641)
300 Delaware Ave., Suite 1370
Wilmington, DE 19801
Telephone: (302) 480-9412
E-mail: thoran@shawfishman.com

-and-

**PERKINS COIE LLP**
John D. Penn  (Admitted *Pro Hac Vice*)
Schuyler G. Carroll  (Admitted *Pro Hac Vice*)
Tina N. Moss  (Admitted *Pro Hac Vice*)
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
Tel: (212) 262-6900
Fax: (212) 977-1649
Email: JPenn@perkinscoie.com
E-mail: SCarroll@perkinscoie.com
E-mail: TMoss@perkinscoie.com

*Counsel to the Official Committee of
Unsecured Creditors*